Good morning and may it please the court, Megan Hoffman, appearing on behalf of Marysa Comer. We raise several challenges to the social networking ban imposed by the District Court in this case and today I'd like to focus on two of those issues. First, this case presents a textbook example of improper delegation of the court's role to probation. As this court has held, imposing a condition of supervised release is a court judicial function and as the government has conceded, in this case that core function includes the responsibility for interpreting the term social networking. Yet here the District Court delegated that role to probation and permitted probation to determine the nature and scope of the condition. This unfettered discretion leads to the second issue in this case, that the condition does not provide a person of ordinary intelligence a reasonable opportunity to understand what conduct the condition prohibits. The court here did not offer any guidance as to the meaning of the term social networking and as the Second Circuit held in green, that sort of discretion or that sort of failure to define a term makes the person's use of should vacate the social networking condition and remand to the lower court. This court has... You could start out in talking about the definition of social networking site. Why the definition the Supreme Court of the United States provided in Packingham is not sufficient to provide enough guidance? Your Honor, I think that the definition in Packingham, the court did not necessarily define a, excuse me, a finite definition in Packingham. The court recognized in Packingham that websites such as Facebook and, you know, would be something that is commonly understood as social networking, but they also recognized that websites like WebMD and WashingtonPost.com could also be considered social networking sites. The government here has proposed a an account of a website in which a person has to create an account and can interact with other users online. However, that really opens it up to any account. It could be Amazon. It could be Facebook. It could be, as we mentioned, WashingtonPost, as the court recognized in Packingham. And frankly, the definition of social networking is not easily defined by how we use the Internet. Were you saying the court was required to give a laundry list of sites that she was banned from? No, Your Honor, that's not what we're saying. What we are saying is that the court did need to provide some sort of parameters under which the probation officer would implement and manage Ms. Comer on this condition. And a more... What kinds of parameters? Your Honor, I mean, I think we noted in our briefing that Ms. Comer, for example, already is subject to the computer monitoring condition. It's 24-7 monitoring. But if that were not enough, then something along the lines of an account in which the user had to create an account and it permitted private communication between users. I think if there were private communication, that is not something that Amazon permits, for example, where you are entering a product review. But instead, it would be something like Facebook, where you can send private messages to different users. That would also be targeted to the conduct that the district court was addressing at the hearing below. Ms. Hoffman, let me read you the Packingham definition. And I agree with you, it didn't purport to be a universal definition. But what's wrong with it? What's vague with it? A social networking site facilitates social introduction between two or more persons for the purposes of friendship, meeting others, or information exchange through the use of personal profiles and the ability to communicate through a chat or message board feature. Now, there's no question there are going to be examples such as those that you provided that fall within that. But why isn't that a sufficient guiding framework for a court to use in instructing a defendant as to what behavior is expected on supervised release? Your Honor, I think that there are a couple responses here. First of all, the district court didn't limit the condition in this case as the Supreme Court defined it in Packingham. But even if it had, in this particular case, it still has to be reasonably related to miscommerce conduct and to her history and characteristics, the nature of the offense. And in this particular instance, the court, everyone agreed that it was Facebook at the time of the hearing that miscommer had abused. But the term social networking on its own does not limit, does not provide miscommer with a reasonable understanding of whether or not Amazon would fall under that parameter. Because Amazon, for example, is a site in which I make my user network and I share information and ideas with others on whether or not to buy a product, for instance. If a laundry list is not required, and you say that the definition that the Supreme Court gave us in Packingham, and I realize the district court didn't hold it to that, but if you say that that is vague because there can be lots of outliers, then what is the court to do in this situation? Your Honor, I think, as I mentioned before, that we would be, I would not object if the district court had imposed a condition here that prohibited miscommer from engaging or from creating social networking accounts that permitted her private communications with others. In that particular instance, that is what occurred here, that she was creating, she was using these sites and having private communications with others. And it was on that basis that probation filed the revocation petition based on her conduct in these private communications. So she could publicly solicit people to engage in this prostitution? If she did so publicly, it would be okay in a public context in network sites? No, certainly, Your Honor. And we're not arguing that what miscommer or her conduct was okay. In fact, she conceded the computer monitoring that she had violated that condition. I think that the condition that's already in place, however, the standard condition that she brought from Washington was that she shall submit the computer monitoring covers that. Probation still has the opportunity to monitor those communications, and if miscommer is engaging in any sort of illegal activity, that still would result in a violation of her conditions of supervised relief. As this court is held in Miller, the court gets to determine the whether and the how of the condition, and probation only gets to determine the where and when. But here, probation got to determine the scope of the condition. And probation took an I'll-know-it-when-I-see-it approach. When the district court specifically asked probation, how do you want this worded, she was clear to explain to the court that the condition as it's drafted in the District of North Carolina says that it's any social networking restriction without approval from probation. And she, in fact, noted that that would include websites such as LinkedIn, although she said she wouldn't prohibit her from that. Her statement indicated that probation thought she did have the discretion to prohibit her from LinkedIn if she wanted to. That is the problem with this condition, is that the unfettered discretion provides subjective, allows probation to exercise a subjective opinion on whether or not a particular condition is a social networking site because the court did not give her any guidance. We have an instance here, and these cases admittedly will become more difficult as we expand into what the utility of social media is. But your client didn't comply with the monitoring conditions, did she? She did not comply with the monitoring conditions, and she admitted to that at the hearing. Why does that not allow for something more severe to be called for? Particularly when we look at the 11th and the 5th Circuit cases, in those cases, it essentially says that this provision of no internet without probation's permission, conditions of supervised release, do not delegate impermissibly this authority. And I don't know of a case that says anything in a different way. So why couldn't she simply just explain if she's confused about certain uses to the probation officer? Your Honor, I think that, first of all, again, that doesn't cure the problem here that it is a decision of whether or not the website would conform to whatever her idea of social networking is. I think also- Well, you have someone whose very conduct is sort of tied in terms of social media. The thing you're trying to prohibit has indicated she doesn't have a willingness to comply. She's already violated the monitoring conditions. And so what do you do at that point? I mean, when you get to that point with someone who's in that kind of a mind frame, you know, when you're looking at cases that say, well, you have to get the permission of the probation officer, nothing's indicated the probation officer wouldn't give you permission of it. She's not made any effort to do that, that I can recall. So, I mean, why is this such a problem here? And, I mean, when we look at even Pakenham, that's really not a constitutionally vague question. It does go to the social networking issue. But the issue here is, you know, that you bring is whether this is constitutionally, unconstitutionally vague. That's correct, Your Honor. In Pakenham, it was more of an over-breath question. And I'm now, you know, I'm addressing the vagueness question. I think, you know, Ms. Comer admitted to her conduct, and we do not dispute here that there was a violation. I think that the monitoring here worked, in that it demonstrated and it reflected to the probation officer that she had violated her condition. And we also, you know, like I said, would not object to a condition that permitted, that explained to probation some parameters here, whether that be through private chat, or whatever the case may be. I think also... But I do want you to at least help us out, because when we have circuits like Leavitt and the Fifth, and Haviston in the Fifth, and Bush in the Eleventh, and if you look at those conditions there, it looks to me like they allowed probation to make any decisions about any Internet access. That looks like it's more of a delegation than what you even have here. And the Fifth and Eleventh Circuit said it was okay. Well, Your Honor, I think... Well, thank you, Your Honor. I would like to think that it's the latter. But I think, Your Honor, that here... First of all, this Court's authority, certainly, if it's a broad Internet ban, this Court has upheld that recently in Hamilton, as the government pointed out. But this is not a broad Internet ban. This is a social networking ban. None of the parties below believed that Ms. Comer was... that a broad Internet ban itself was appropriate. And frankly, this Court's discretion, or this Court's authority, has indicated that the where and how of a... I'm sorry, yes, the whether and how of a condition has to be given to the Court. And the how here is how Ms. Comer would violate that condition. The Court did not provide any guidance... You know what, step it aside from the legal arguments so we can kind of make sense of why this is being done. I mean, the Court didn't just out of the blue say, you know, or they didn't just impose these conditions out of whole cloth as a reason for it. And when we look at what she did, the underlying conditions, which we seem to escape from, and you try to tie in the conduct, okay, we're going to let you free, but while you're free, you can't do these sorts of things, particularly now, you know, in retrospect, if you look, she violated the monitoring conditions. What, tell me, recall to me, what did she do with the Internet that caused her to get into this kind of situation, the criminal underlying offenses? The underlying offense, Your Honor, was Ms. Comer herself was trafficked from an older gentleman, I think three decades older than her. I got her part, I got her part, and it's a very sympathetic situation for what she did, but that's really not the focus here. I want to move to what she did, what she did. Whether it's excusable by the fact that the mitigated by the fact of how she got there is one thing. I got that, and it's a very difficult case, I must admit, but I'm dealing with what she  Yes, Your Honor. And what did she do on that Internet? So, yes, while she herself was recruited on the Internet, the person that recruited her also trained her in using the Internet to recruit other people. Ms. Comer did recruit an adult, and for that she committed, she pled guilty to the conspiracy. She did do what? You move quickly. What did she do? She recruited and did what? She recruited women for, this was a conspiracy to recruit women to go across state lines for a possible prosecution, to my understanding. For sex trafficking. That's correct, Your Honor. For sex trafficking. And then, during her supervision, she used the Internet. The problem with her, for which she violated, wasn't even related to that. She crossed over into another crime. She was trying to commit drug crimes, wasn't she? Your Honor, the allegation at the revocation hearing here was that she was, she had met a person on Facebook and was connecting him with other people who had told her they wanted to buy narcotics. That is, that is true, and we, and we admitted to the, to the probation. I'm sorry. Don't answer, Your Honor. Go ahead. Yeah, so she was using social networking sites to facilitate new criminal activity. That is what the district court found, yes, Your Honor. Yeah. So, you're, what can the court do? I mean, let's leave aside that this is your client and you're, you know, you're advocating for her. What, what are the legitimate bounds of what a court can do? I haven't heard your answer on that. Your Honor. If you have a defendant who is given a chance and then continues to violate the law and uses social networking sites as a tool for breaking the law, what can a court do? Yes, Your Honor. I see my time is running. Can I answer, please? Yes, Your Honor. Yes, Your Honor. I think we are sympathetic and I am not saying that the district court could not have imposed the condition here. We agreed that a ban on Facebook, for example, would be entirely appropriate given Ms. Comer's conduct. I think that the, there are two things to note here. First, this is a standard condition in North Carolina, and so this doesn't only apply to Ms. Comer. This applies to anyone that the district court opted to impose the standard sex offender condition. And so... But everybody is not Ms. Comer. They didn't come back and violate the monitoring position. I mean, you have these things there. And while it seems to be restricted, it does give her an avenue. She can go and ask the probation officer or explain and seek this permission to do so. It seems somewhat reasonable given the fact that when they put it on her, she just didn't do it. And the evidence shows she physically, emotionally, psychologically abused a developmentally disabled young woman using the social network. You know, sympathetic client in some ways and then not sympathetic, but dealing with the strict means of how the court is trying to handle this situation. This is not the 11th and the Fifth Circuit cases I brought to you again, which it was much broader. I mean, you may characterize it as being somewhat different, much broader. This has a restrictive, has some limitations. I mean, she could get it from the probation officer and from a constitutional perspective, given all that we're dealing with, how is that vague? Your Honor, I think I agree with you. This is a difficult case. But I think that Ms. Comer, we suggested here that the court absolutely certain conditions were appropriate in this matter. And I think that had the court provided some explanation to probation, not a subjective intent, but what the court's intent was. And if the court's intent was that she not communicate with other users, that the private communication parameter... Let me ask one last question, just for my information. Could the district court have banned her altogether for the internet? Your Honor, I think that under the Hamilton case, yes, that that was a possibility. However, at Ms. Comer's hearing, no one suggested that was appropriate. But even so, when I hear that, then I wonder, why are you complaining if they give you something less, you know, than what they could have given you? Your Honor, I think that with, as implemented here, this is very, this is not a workable condition. With the way that we use the internet, the fact that I'm on Zoom right now with you means Ms. Comer would have to go and ask her probation officer if she could, you know, participate in a job interview, for example. Tell me this at this point, and I'll leave it be so we can move on. Yes, Your Honor. If we went in your direction, could the district court now come back and say, no internet, I've revalued, you don't get internet? I think certainly the probation and the government could ask for that for Ms. Comer, but certainly as the, neither, none of the parties believe that that was appropriate at the prior hearing. I, you know, I can't speak for counsel, but I would assume that counsel could argue that that is not the most limited or narrow use of the condition as required by the statute. Thank you. Thank you, Your Honor. Thank you, Ms. Hoffman. Mr. Enright? Your Honor, may it please the court. Anthony Enright for the United States. Ms. Hoffman's concession about Hamilton I think is entirely appropriate, and I think it resolves this case essentially. Hamilton is almost on all fours with this decision. Very similar underlying conduct. Ms. Comer maybe took it a step further because she was on supervised release and continued to use apps to circumvent monitoring, to use social networking to facilitate drug trafficking. And what Hamilton said was a far greater delegation, delegation of the probation officer to approve any use of the internet, upheld that and explained in detail that the supervised release system, the statutes created by Congress, didn't give all of it. She says you didn't bring that up about no internet that, you know, perhaps didn't even think that was appropriate for a case of this sort, which we now know. But let me make sure I understand this because I don't want to lose this point. And if Hamilton permits the judge to do no internet, and this is a lesser one, but the proceedings below, that consideration never came up at all, given what we are dealing with here. If you are looking at it, you might say it's on all fours. He could have done it. I'm just wondering why you didn't do it, given the kind of emotional, psychological, physical abuse to a developmentally disabled young woman using this internet and the kind of conduct happened. But you didn't ask for that. You asked for something less. And I get the point. I've asked the question, well, why would you complain if you get something less? But the point being is you didn't, the threshold wasn't put there. It was, I mean, the limit put right there, we're going to do these conditions, and if you're going to do them, the complaint here is they're not being done in a constitutional manner. So, Your Honor, I think the answer to that is simply this court's standard. What this court has said is that the circumstances and the conditions need to be, the court needs to conduct an individualized assessment and impose conditions that are appropriate in light of the circumstances for the individual defendant. And the key factor here is the probation officer thought this was a necessary condition. And internet dating and social networking accounts were the centerpiece of her conspiracy. And they were a serious problem leading to her violations on supervised release. It was those specific, that specific segment of the internet that was the most pernicious problem. And so I think it very much reflects an appropriate application of this court's standards for the court and for us and for the probation officer to consider first a less restrictive standard. And for doing that, it certainly, I don't think it could violate the non-delegation doctrine under Hamilton because it delegates less. And it delegates less than what was delegated in Van Gogh and upheld appropriately. That decision upheld the delegation of, to a treatment provider. A very broad statement, you have to follow the rules of the treatment provider. And the treatment provider, kind of like Ms. Padilla in this case, testified, here's the rules I'm going to enforce, here's what they are. There was no requirement that the court take the extra step of putting in the judgment, okay, I heard your testimony, that is officially what you're bound to. It was enough that the court heard the evidence. And it was enough that the court ultimately retained authority for determining whether he violated the terms of the supervised release. Ms. Hoffman said, I conceded that the probation officer was responsible for interpreting the term social networking accounts. Now, that's simply not accurate. That's not what I said in my brief. The district court, the judge, retains the prerogative of interpreting that term. So the defendant is always able to go to the district court and say, the site I was using, I believe it was not a social networking site, and it would be up to the district court to make that decision. And that's a critical factor, it was a critical factor in Hamilton and, or it was a critical factor in Van Donk. And it applies here. So let me understand that, Mr. Wright. You're saying that if she has a problem, she can go to the district court on each of the sites that she wished to visit? Well, that is correct, but that's not what I'm saying. What I'm saying is that the district court has ultimate authority to decide whether she violated her supervised release. That is the judicial function. I understand that, and you're giving me the general principle, but in order to make it work, she has to go to the district court, right? And my question is, what I'm saying is that she, I'm sorry, Your Honor. Well, let's make sure, well, you're saying she's not, it's not like she doesn't have a remedy, she can go to the court on it. That's what I understand you're saying. But that means if she wants to go for each one of these sites, either she collect them in a basket and take it to the court, or she can come back and just keep asking, what about Tinder? What about Snapchat? What about Reddit? What about all these other ones, the newspapers and things of that nature? And maybe the court eventually would fashion out some kind of guidelines for it to work with. But I don't quite understand. Having that remedy may be there, but it's like the general remedy. We all have a remedy to go to the court if we have a dispute. The availability may be somewhat limited. I'm just skeptical a district court is going to spend a whole lot of time hearing all these complaints about whether or not someone should get to the Internet or not when the district court has given, has not been presented, not given an opportunity to say no Internet at all. That might be my inclination. If I was there, if it was available, let me just fix this. Just don't go on the Internet. Let me back up. If you'll permit me, let me back up a second. Please. I probably miscommunicated something because I think we're talking about two different things. The only thing I was referring to in my comments was the fact that if she is accused of violating the terms of her supervised release, she would always have the defense of saying to the court, Your Honor, I don't believe this was a social networking account. The district court would retain ultimate authority for making that decision and deciding whether she violated her supervised release. The reason I bring that up is because it was significant to this court in Van Donk that it wasn't an impermissible delegation of a judicial function. What I think Your Honor is talking about is an authority the district court does have is that she can go ask for a modification at any time. That sometimes tempers the severity of some conditions. That was not what I was referring to, but it is true. In this case, there's also the additional step of she can go to her probation officer and A, seek clarification. Hey, I'm not sure if Amazon qualifies as a social networking account. Will you let me use it because I want to buy something? The probation officer will probably say yes. There's no risk that she's going to inadvertently violate her conditions in that way. That goes more to the vagueness issue. What this court held was that the ability to seek clarification and the active role of the probation officer or in the case of Van Donk in a therapist is a feature that makes it less of an inappropriate delegation than more. That's the only reason I bring that up. There's a distinction here in terms of whether she violated the supervised release which the district court would determine or the probation. That's a probation officer sort of prerogative. You're saying she can go back to the probation officer on the probation matter, but there is also the opportunity if she's brought up on supervised release to address it to the court. The only way that Ms. Comer's supervised release can be revoked is if the district court decides that it should be revoked. That is not up to the probation officer. The probation officer can say, I think you violated this and I'm going to ask the court to decide that you violated the terms of your condition. Ultimately, that responsibility, which is the judicial responsibility vested by Congress in the courts, stays with the district judge. It's not an unlawful delegation and it's entirely appropriate in light of what Your Honor mentioned, which is the very serious nature of this offense. She used social networking accounts to solicit women who she used physical force to have sex as a prostitute and then used social networking to extort her into continuing to do that and when it was unsuccessful to humiliate her. She then continued to use social networking when on supervised release in violation of less restrictive terms, such as monitoring, to meet people who she facilitated drug transactions for. The condition directly advances the purposes of protecting the public and deterring further crime. It's no more restrictive than reasonably necessary because it is limited in the ways we've mentioned and because it allows the probation officer to approve uses that will facilitate her rehabilitation and that won't get in the way of protecting the public and deterring further crime. It's not unconstitutionally vague. I want to address briefly the definition of that term, the dictionary definition, the definition in Packingham. They're similar. It's not so much which, I don't know that this court even needs to pick a definition in this case, it's that there is a core understanding. What this court held in Hamilton was categorical terms can provide adequate notice when there is a common sense understanding of what activities the categories encompass. The fact that this court and the defense and defense counsel in their opening brief used the term social networking readily. It certainly has a core meaning. The fact that there might be gray areas or questions is, according to this court in Van Dong, certainly doesn't take it outside of, doesn't put it in the category of impermissibly vague. I won't belabor the point, I do want to briefly discuss the second issue raised by Ms. Comer because I suspect Ms. Hoffman will raise it on rebuttal. District Court certainly didn't plainly err by declining to order the probation officer not to sit at counsel with the United States. Anybody ever held that? Nobody's ever held that to my knowledge, Your Honor, and I think it's something even defense counsel concedes. This is a question for the discretion of the district court. The probation officer certainly occupies, a violation of the terms of supervised release is a breach of the court's trust, according to both the Supreme Court and this court's precedent, and the sentencing guidelines manual. It's a breach of the court's trust. It's a violation of the court's order. Having the probation officer sit on the opposite side of the person saying, I didn't violate this court order or I don't think I should be punished for it, Wait, so do you agree that the probation officer is an arm of the court? Absolutely, Your Honor. Okay, so and at a hearing where the issue is a breach of the court's trust, you have the court sitting at one counsel table, basically, since the probation officer is an arm of the court. Isn't that at least an appearance of impropriety, if nothing else? I don't know that it's an appearance of impropriety. The question of whether that appears improper in a given case, is going to be a question for the district court, the person in charge of that courtroom, the judicial officer in charge of that courtroom, to decide in an individual case. And I think it's particularly, it would be a big thing, I think, for this court to take away the discretion of district courts to manage their own courtroom in this way. So in the Western District of North Carolina, does the probation officer always sit at the prosecution counsel table? It's certainly not uncommon. I don't know if it's absolutely always, but it's certainly a common occurrence. For what purpose? Well, to give an example, in this case, and I don't know, I know just a little bit outside of the record in this case, but the reason the probation officer was making comments to the AUSA was because the defense attorney was making a proffer, just making statements about what Ms. Comer had done while on supervised release, and they were just conferring. The AUSA just asked her, is that true or is that not true? But couldn't that be done with the probation officer sitting at a separate table as an arm of the court? It probably could, Your Honor, and I have absolutely no doubt that Judge Cogburn would have given that serious consideration had the defendant asked for that. Right, and I understand there wasn't really, or at least there doesn't seem to have really been an objection here, so that the error is, it would have to be plain error of you, but what if there was an objection here? Then do you still think it's fine? I think the question would turn on what the court's response was. What was the consideration for that? I think the key point, and I don't know if it's clear from the defendant's brief or mine, but the probation officer is accessible to both. If she wanted to ask the probation officer questions during the hearing, she could have. True, so I don't know why, if the probation officer is accessible to both, and certainly the probation officer is accessible to both as an arm of the court, I don't know why the probation officer needs to sit at a prosecution table. Your Honor, I do think it's one of those things where really the objection isn't just a formality to raise the issue or anything, it makes a big difference. If the court, she sits there, the court sees it, nobody in the courtroom has a problem with it. Wait, I think the defendant had a problem with it. I mean, maybe wasn't raised in this case, but I would think any defendant really would have a problem with it if you're coming into a courtroom where your violation of supervised release is being considered, a breach of trust of the court is being considered, and the arm of the court is sitting at the prosecution table. If I'm the defendant, I just go in there and say, well, I mean, the deck is stacked here. And I'm not saying that's actually the case. I doubt it is. I'm sure it was, you know, the probation office and prosecution, you know, was fair here and wasn't trying to do anything improper. I'm talking about the appearance of something improper. It just doesn't seem right when the arm of the court is sitting with one side of the dispute. I actually have been in a number of courts across the country in this very situation. I've never seen the probation officer sitting with one side or the other. I don't know how prosecution would feel if the probation office on a regular basis just sat at the defense table. Your Honor, I don't want to discount the concerns you mentioned. I think they're very much an appropriate consideration. But I do think what you have with the probation officers, the probation officer does have a role in, you know, making a violation to the attention of the court, asking for a warrant, making a recommendation that she be detained. There is a degree of placing that probation officer in a position potentially adverse to the defendant in the structure that Congress created. So let me ask you, could you just embrace essentially what Judge Thacker is saying and just give the answer that, well, in this case, it's not plain error? Oh, absolutely, Your Honor. You're arguing a case that you don't need to argue right now. This is a plain... Please let me finish. You know, sometimes I know you want to reach in because you come up here a lot. You figure this thing is going to come back up and you want to be consistent. But there are instances in which you could, you know, for purposes of this argument, says, you know, that may well be. I don't know. But here, the issue is plain error and it doesn't meet plain error. And where do you need to go beyond that to say, I mean, why do you need to get into all this business as unseemly and all this other stuff if it's not plain error? If it's not plain error, do you need to go any further than that? Absolutely not, Your Honor. It's not plain error. Then why do you? In his defense, I think, because I kept asking him about it. What I'm saying, you could answer a question and the affirmative says, well, it may well be, Your Honor. It sounds like those are really serious concerns. And I'm not going to say no at this time. But what I will say is that it's not plain error. Is that a legitimate answer? And respectful to Judge Thacker. That is absolutely a legitimate answer. I try to answer this Court's questions if I can. Whether I need to or not. I understand. I'm not trying to give you an opportunity to answer it. But, you know, I do like to focus on the issues in the case. Absolutely. When you find yourself in a situation where a very compelling situation has been presented by Judge Thacker. And sometimes you can just say, well, I'm with you. That is a major problem. But this is plain error. And then move ahead. That's a good answer. That's absolutely a plain error, Your Honor. And we'll give it a go step by step.  don't you want something a little more going on here? There was a question There wasn't a specific objection to the seating of the probation officer with the prosecutor. But the defense counsel did complain to the court about the fact that they were conferring during the proceeding, didn't they? That there were discussions going on. That the defense was not privy to those discussions. Yes, Your Honor. That was pretty much her exact words. She said, I would just note that I'm not privy to the same information probation is currently adding to the prosecutor. It was to a specific event because they don't sit at our table. And the court took that as a request or maybe a mention of maybe they should disclose that. Now disclosing something is very different from saying you can't meet with the person. And I understand we're here under plain error review. But I think a lot of times we do things in courtrooms just because they've always been done that way. And we really don't think about it. For example, the Fairfax County Courthouse in Virginia where I started out, they always put women up in the balcony. And women were instructed never to speak during a hearing. Times have changed. You know, we have to look how we do business. And sometimes just the fact we've always been doing it that way does not make it the best practice. And to that end, do you have any objection to us adopting what the Seventh Circuit did in Turner? Telling courts, think about this. Think about what you're doing. Think about what the best practices are. Just because you've always been doing it doesn't mean it doesn't send a signal to a family member who sees the probation officer in a private conversation with the prosecutor and the family members wondering how is my son or daughter going to be getting a fair shake? Do you have a problem with us taking that language from Turner and incorporating that into an opinion? I don't have a problem with this court urging caution and suggesting that it consider this. And I don't have a problem with the sentiment at all. The only reservation I would suggest is that it is inappropriate ordinarily to give an advisory opinion or to address cases not before this court as the defense has asked this court to do. And so I would suggest or recommend the court stop short of that. But I don't have any objection to the sentiment, Your Honor. And I think if the court had an opportunity to give it appropriate consideration... I'm not so sure it's so advisory. In the determination of whether something is plain error, you first have to determine if there's error. And so I don't think it's advisory to say something is error in the plain error and yet if you ultimately determine that it wasn't so clear and obvious or severely affected the public's perception then it's plain error. So I don't think it's as advisory as you make it out to be. Perhaps not, Your Honor. Turner did not find an error by the way and didn't go that far. And I do think... But I'm simply speaking to the plain error analysis that the first thing you do in it is determine whether an error was made. Right? Sometimes this court doesn't have to do that. It can determine that if there was an error it wasn't plain. I understand. We deal with it in Section 1983 cases. We don't have to deal with the constitutional violation. We can go to clearly established. But that is nonetheless one of the elements that can be reached. From Judge Kainan's perspective, she said, do you have a problem if we do it and saying there was an error? That was the question she had. Yes, Your Honor. And I understand that. If I've answered to the court's satisfaction I will... I know I'm greatly over time. I will certainly sit down and ask that the court affirm the decision of the District Court. All right. Thanks, Mr. Stainwright. Ms. Hoffman, rebuttal? Thank you, Your Honor. Just really briefly, I won't belabor the probation sitting at counsel table point. But I will note as I also have a little information outside the record that in this district it does seem from my conversations with trial attorneys that probation does sit at counsel table at nearly all hearings in which probation is making a recommendation to the court. So it's not just limited to these revocation hearings. Your Honor, I also... While we certainly think that the trial attorney did alert the District Court to the problem here and the District Court certainly understood what she was saying I understand the court's position that it certainly could have been clearer of an objection. But I will just leave it at that and say that I do believe that the Turner recommendation is appropriate here given the practice as this court as Judge Keenan noted that sometimes the way we've been doing things for a long time doesn't always mean it's the way that is the right way to continue forward. Your Honor, I just really quickly wanted to address the counsel's... to Van Donk. The Van Donk case I think is important because there they upheld a condition which probation was able to monitor and address how the client attended his sexual offender treatment. In Van Donk, this court upheld that condition because it found that the court isn't directing someone else to decide a difficult legal issue, i.e. to interpret a vague rule imposed by the court. Instead the court noted that the difference here is that the condition authorizes the treatment provider to interpret and set its own rules, not to interpret the court's rules. In Van Donk, it noted that that was a major distinction between allowing the treatment provider to determine what the treatment would be versus the probation officer because the treatment provider was just implementing its own parameters, its own program, whereas the probation officer would have been interpreting the court's rules in a way that it thought the court meant. And that's precisely what the problem is here, is that probation is able to impose its own subjective view on what social networking is. And so under that particular parameter I think that Van Donk actually supports our position because here probation is called to decide a difficult legal issue, i.e. the determination or interpretation of the term social networking. And lastly, as to Hamilton, I would just note that Hamilton actually does not address the vagueness at all. Hamilton addressed an over breadth challenge and as we noted that they upheld the over breadth of the internet challenge, but Hamilton also addressed the Article 3 violation with regard to an employment condition. And there the court in fact vacated the employment condition because the district court had not set sufficient parameters for probation to follow in that condition. And so with those points I think that this court's authority demonstrates that the condition here was a violation of Article 3 delegation. The condition is not easily understandable and is vague and also we would just ask that the court consider the Turner language. If the court doesn't have any other questions I will dismiss my case. Judge O'Sullivan, any questions? No. Thank you, Ms. Hoffman. Thank you, Your Honor. Counsel, you've both done an excellent job today. We appreciate your help and we know you've had to put up with some technical issues in terms of our virtual setting but your arguments were excellent and I think you overcame well any obstacles that were placed in your path. So thank you very much.
judges: Barbara Milano Keenan, James A. Wynn Jr., Stephanie D. Thacker